ELSIE MARR, Appellee, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

Pleadings:   STATUTE OF FRAUD.   Where the pleadings disclose that a contract is within the statute of frauds because not in writing, an objection thereto must be raised by demurrer and not by answer.

Statute of Frauds:   PAROL EVIDENCE.   Objection to proof of a contract within the statute of frauds by parol must be made when the same is offered and not on appeal.

Boarding Contract:   CONSIDERATION.   A restaurant keeper, avers to boarding non-union men, was induced to do so on the agreement of defendant to furnish and pay the board of a certain number for a certain time at an agreed price.   *Held*, that there was a sufficient consideration to support the contract.

Boarding Contract:   ACTION ON:   DEFENSE.   The fact that a restaurant keeper closed her place of business after defendant, in

violation of its contract, refused to furnish her boarders, is not a defense to a suit on the contract on the ground that she disabled herself from its execution by going out of business.

Accord and Satisfaction.   The mere fact that defendant paid to a son of plaintiff the amount actually due on a boarding contract did not amount to an accord and satisfaction of the entire contract.

*Appeal from Cedar Rapids Superior Court.*—HON. JAMES H. ROTHROCK, Judge.

WEDNESDAY, OCTOBER 7, 1903.

ACTION to recover for breach of an alleged contract. The facts will be found stated in the opinion. At the close of the evidence for plaintiff the court, on motion, directed a verdict in favor of defendant. Thereafter a motion for new trial was made by plaintiff, and this was sustained. From the order granting new trial, defendant appeals. —*Affirmed.*

*J. C. Leonard* and *S. K. Tracy* for appellant.

*Rickel, Crocker & Tourtellot* and *Wm. Chamberlin* for appellee.

BISHOP, C. J.—Plaintiff kept a boarding house or restaurant in Cedar Rapids, and her claim is, in substance, that in April, 1901, defendant, through its officers and agents, entered into a contract with her, by which defendant was to furnish her with at least sixty regular boarders, employes of defendant, for a period of at least six months, the defendant to pay to her the sum of $3.50 per week for each of such boarders. It is alleged that she consented to take such boarders at the price named, and did thereafter provide board for all the employes of defendant sent to her, but that the average number thereof did not exceed twenty, and that about June 13, 1901, defendant renounced and refused to further comply with the contract. Plain-

tiff says that the fair profit which she would have realized on each boarder would have been seventy-five cents per week. The answer is a general denial, and, in addition thereto, the statute of frauds, and a full settlement are pleaded. From the evidence introduced by plaintiff upon the trial the jury would have been warranted in finding the facts to be as follows: On April 28, 1901, certain of the officers of the defendant company came to plaintiff's restaurant, and requested her to take to board a lot of nonunion men whom the defendant company had brought in to take the place of its striking employes. Plaintiff objected, saying she was afraid to take the men, because they were nonunion men; that she would be talked about mean for having scabs, and that it would ruin her trade. Defendant's officers assured her that the railroad company would back her, and that, if she would take the men, they would fill her house with an average of sixty men, at least; that she could count on the arrangement lasting at least six months, and that the company would pay the board of all the men at the rate of $3.50 per week. To this she finally consented. The defendant furnished her and paid for an average of twenty men until June 13th, when it refused to carry out the arrangement any further. In the meantime all the other boarders of plaintiff left her, and, having no business, she was compelled to and did close up her house. That there would have been a profit on the business, had the arrangement been carried out, is not questioned.

Defendant says the order granting the new trial should be reversed, and judgment entered on the verdict, for reasons which we will now proceed to consider. It is 1. PLEADINGS: said, in the first place, that the oral contract statute of frauds. sued upon was within the statute of frauds, there being no written or competent evidence to establish the same. The particular section of the statute relied upon is as follows: "Sec. 4625. Except when otherwise

specially provided, no evidence of the following enumer-
ated contracts is competent unless in writing and signed
by the party charged, or by his authorized agent:
* * * 3. Those wherein one person promises to answer
for the debt, default or miscarriage of another," etc.
That the contract here relied upon was not reduced to
writing appears from the allegations of the petition.  No
objection was made by demurrer, and the record does not
disclose that any objection was made at the time the oral
evidence was offered.  It is not sufficient to raise the ob-
jection by answer alone.  *Wiseman v. Thompson*, 94 Iowa,
607; *Graves v. Clark*, 101 Iowa, 738.

 When parol evidence of a contract within the statute
of frauds is introduced upon the trial without objection,
it cannot afterwards be objected to upon appeal.  *Crossen
v. White*, 19 Iowa, 109.  But, if this were not
so, the objection is not well taken.  The agree-
ment was with the company to board its employes, and plain-
tiff was to be paid by the company.  There was no promise
to answer for the debt, default, or miscarriage of another.

2. STATUTE of frauds: parol evidence.

 It is next said there was no consideration for the
alleged contract.  It does not appear that this ground of
defense was raised in any way, either by pleading or in
the motion to direct a verdict, in the court
below.  But, even if we might disregard the
question as being raised in this court for the first time, we
prefer to dispose of it on its merits, in view of a further
trial of the case.  In doing so, we need say no more than
that plaintiff was induced by the promises of defendant's
officers to take the chances of having her business ruined
by taking the men to board.  The result was as she feared.
We think the consideration was sufficient.  See 1 Parsons
on Contracts, 451; *Blake v. Blake*, 7 Iowa, 46; *Harlan v.
Harlan*, 102 Iowa, 701.

3. BOARDING contract: consideration.

 In the third place, it is said that plaintiff, by her own
acts, disabled herself from the execution of the contrac',

by going out of business. This ground cannot be sus-
tained. The plaintiff did not go out of busi-
ness until after defendant refused to send
any more men to board, and she then found
herself without any business. Defendant had no right to
expect her to keep her doors open and her empty tables
waiting for the men it had refused to longer send to her.

*4. Boarding contract: action on defense.*

Finally, it is said that the whole claim of plaintiff was
settled, and full accord and satisfaction had thereon, be-
fore this suit was brought. The evidence simply shows
that the son of plaintiff went to the office of
defendant after the boarding of the men
ceased, and there was paid to him the amount due on
board which had actually been furnished. This did not of
itself amount to a settlement of the claim here sued upon.

*5. Accord and satisfaction.*

We have not undertaken to discuss any questions save
those directly raised by the assignments of error. A mo-
tion for a new trial is addressed to the sound discretion of
a trial court, and such discretion will not be interfered
with except in cases of abuse. There was no abuse of dis-
cretion in granting a new trial in this case, and the order
is AFFIRMED.