## WOOD et al. v. DODGE.

An exception to an instruction is unavailing where no specific error is pointed out.

Under the statute of frauds (Rev. Civ. Code, § 1973), merchants cannot enforce a farm lessor's oral promise to pay for farm machinery and twine furnished the lessee, where it does not appear that the merchants relied on such promise, where the prima facie proof that credit was given the lessee, as shown by charging the goods to him, was not explained, and where it does not appear that the lessor was interested in having the goods furnished.

An oral promise to pay for goods furnished at the promissor's request to a third person is not valid if the transaction is wholly or partly on the third person's credit, so as to create a debt against him, to which the oral promise is merely collateral.

In determining to whom, as between one orally promising to pay for goods furnished another, and the person for whose benefit the promise is made, the credit was actually given, as affecting the validity of the promise within the statute of frauds, the manner in which the creditor entered the transaction in his books is material; evidence that the goods were charged to him to whom they were furnished tending to show that the credit was given him, and that the promise

was a collateral undertaking, though such charge may be explained away.

(Opinion filed, April 6, 1909.)

Appeal from Circuit Court, Grant County. Hon. J. H. Mc-Coy, Judge.

Action by G. A. Wood and another against A. C. Dodge. From a judgment for plaintiffs and from an order denying a new trial, defendant appeals. Reversed.

*Thad L. Fuller,* for appellant.

The liability on an oral promise in respect to transactions for the benefit of a third person is always tested by inquiring to whom the sole credit was given; if any credit whatsoever was given to the third person so that he was in any degree liable, the oral promise of the other party is not valid. Kent, Comm., Vol. 3, p. 123; 28 Am. & Eng. Enc. of Law, 923. If the whole credit be not given to the person who comes in to answer for another, his undertaking is collateral and must be in writing. Cyc. Vol. 20, 181; Brant on Guaranty and Suretyship, Vol. 1, 181; Leonard v. Vreelenburgh, 8 Johns, 39; Cole v. Hutchinson, 34 Minn. 410; Price v. R. R. Co., 40 Mo. App. 189; Walker v. Richards, 39 N. H. 259; Swift v. Pierce, 13 Allen, 136; Bugbee v. Hendrickson, 130 Mass. 437.

*George S. Rix,* for respondent.

When a person has not parted with the possession or title to personal property and is induced to part with the same upon the promise of a third party, who is responsible, the contract is original. Chase v. Day, 17 Johns. 114; Meldrum v. Kenefick, 15 S. D. 370; Grand Forks Lumber & Coal Co. v. Tourtelot, 75 N. W. 901; Ford v. McLane, 91 N. W. 617; Marr v. Burlington, C. R. & N. Ry., 96 N. W. 716.

WHITING, J. This cause is before this court upon an appeal from the judgment of the trial court in favor of the plaintiff, and also from the order of such trial court denying a new trial. The action was brought to recover the value of goods which the plaintiffs claimed they, as retail merchants, delivered and furnished to one Miller, relying upon the oral promise of defendant made prior to such delivery that he (the defendant) would pay for such goods if so furnished and delivered. The defendant denied ever

making any such promise, and furthermore, claimed that if any promise was made it was within the statute of frauds and would have to be in writing in order to render him liable thereon.

Upon the trial the plaintiffs' testimony tended to show about as follows: The plaintiffs delivered to Miller the goods for which this action was brought and charged the same to Miller on their books. That Miller was at all times when receiving such goods a renter renting lands belonging to the defendant. That prior to the delivery of any of the goods in question, to wit, on October 7, 1903, the defendant paid for certain goods which plaintiffs had furnished to Miller during the year prior; the defendant having written a letter that he would pay for such goods. That on said October 7, 1903, one of the plaintiffs asked the defendant what about the next year, and the evidence on behalf of the plaintiffs is somewhat conflicting as to the answer given by the defendant; the several witnesses testifying to the following different answers: "You let Mr. Miller have what he wants for the farm. I will stand for it." "Let him have what he wants and I will pay for it." "Let him have all he needs for the farm, and I will see that it is paid." "Let Miller have what he needed on the farm, and it would be paid for." Nothing was said as to whom it should be charged to. The defendant had an account with plaintiffs at the same time, but the goods in question were charged solely to Miller. The testimony is entirely silent as to whether or not the plaintiffs would have delivered these goods without first having received whatever promise, if any, was made by the defendant, and there is absolutely no testimony as to whether the credit for these goods was extended relying upon any promise made by the defendant.

Several assignments of error are noted in the record, all but two of which are considered in appellant's brief on the one proposition stated in the form of a question by appellant's counsel; "From all the circumstances surrounding the transaction, does it not appear that the promise of the defendant was collateral in its nature and not an original undertaking?" The above is the only question for our consideration, as the other two assignments claim error in the instructions given to the jury, and the appellant saved

no proper exceptions to such instructions, in that the only thing shown by the record being that after the instructions were given, and which instructions covered several distinct points, the following record was made: "To the foregoing instruction of the court to the jury the defendant duly excepted." ' Such an exception, wherein the attention of the court is not called to any specific error claimed, is of no avail.

The plaintiffs base their claim of recovery upon section 1973 of the Revised Civil Code, which provides, among other things, as follows: "A promise to answer for the obligation of another in any of the following cases is deemed an original obligation of the promisor and need not be in writing: * * * When the creditor parts with value; * * * in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety." Under the facts of this case, does it appear that the plaintiffs parted with the value ' (the goods) in consideration of the obligation (promise) of defendant? We think not. The rule in this class of cases seems to be well settled. An oral promise to pay for goods furnished at the promisor's request to a third person is not valid if the transaction is wholly or partly upon the credit of the third person so as to create a debt against him to which the oral promise is merely collateral. If any credit whatever is given to the third person, so that he is in any degree liable, the oral promise of the other party is not valid. 29 Am. & Eng. Ency.Law (2d Ed.) 180,181; 20 Cyc. 180, 181. In determining to whom, as between the promisor and the person for whose benefit the promise is made, the credit was actually given, an important consideration is the manner in which the creditor entered the transaction in his books. Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him and relied upon him for payment, and therefore that the promise of another to be answerable for the debt was at most a collateral undertaking. 20 Cyc. 183; 29 Am. & Eng. Ency. Law (2d. Ed.) 924. It is well settled that the charges made upon a book may be explained, and thereby remove the presumption that

would otherwise flow therefrom; but in this case there was neither explanation of this evidence, nor was there any evidence to the effect that plaintiffs relied upon defendant's promise.

The words of the court in Williams v. Auten, 62 Neb. 832, 87 N. W. 1061, would well apply to the case at bar: "We are disposed to the view that the evidence is sufficient to support a finding that Williams [Dodge] was liable as the party with whom the contract was made, as the promisor in an original undertaking, and to whom the credit was extended and the goods sold, although for the benefit of and delivered to another, except for that which appears in the record from the pleadings and the evidence, and which conclusively shows that the contract was made with, and the goods were sold to, Welty [Miller], and credit extended to him as well as to Williams [Dodge]." The facts in this case of Williams v. Auten are much stronger in favor of the plaintiff than those in the case at bar.

In Langdon v. Richardson, 58 Iowa, 610, 12 N. W. 622, the evidence was that Richardson came into Langdon's store with one Fountain and told the clerk to let Fountain have what goods he wanted and he would pay for them. The goods were household goods and were charged to Fountain. Richardson also had an account at the store. The Supreme Court says that the trial court should have charged the jury that the contract, as disclosed by the evidence, was within the statute of frauds, and that plaintiff could not recover thereon. The court says: "It is apparent that Fountain bought the goods, and Richardson, in promising to pay for them, agreed to pay Fountain's debts. That it was regarded by the parties as Fountain's debt is made plain by the fact that the goods were charged to him alone." In the case at bar the plaintiffs claim that, inasmuch as Dodge was the owner of the farm, he was interested in having the goods furnished to Miller. The evidence shows that the goods were farm machinery and twine, but there is not a word to show the nature of the lease whereby it would appear that it was in any manner an advantage to Dodge to have these goods furnished by the plaintiffs. In the case of Langdon v. Richardson, supra, the court says: "The plaintiff insists that the evidence supports the allegation of his petition, to the effect that

Richardson was interested in the management of the hotel, and he therefore bought the goods upon his own contract and is liable therefor. We think the evidence gives no support to this position. There is evidence tending to show that Richardson owned the house used as a hotel and had fitted it up, but there is not one word of proof tending to show that he had any interest in its management." It seems in this case that Fountain was running this hotel, the building being owned by Richardson, and the facts in that case were certainly as strong on behalf of the plaintiff, as tending to show interest on the part of the defendant in having the goods furnished, as they are in the case at bar as tending to show such interest on the part of this defendant.

The plaintiffs in their brief have cited four cases which they claim support their position. The first case is that of Meldrum v. Kenefick, 15 S. D. 370, 89 N. W. 863. A mere glance at the facts of that case shows that it is entirely different from what the evidence shows in the case at bar. It appears in that case beyond dispute that the plaintiff built the building, for building which the suit was brought, upon the sole credit of the defendant; the plaintiff having stated to the defendant before the erection of the building that he would not build it on the credit of defendant's brother, who was the real beneficiary, and there was absolutely nothing to show any credit given to such brother. The other cases cited are in support of the doctrine that where there is a direct interest on the part of the promisor in having the work done or goods furnished he will be held liable. We have already shown that in this case the plaintiffs have not proven that the defendant had any interest in having these goods furnished. In two of the cases cited, those of Grand Forks Lumber, etc., v. Tourtelot, 7 N. D. 587, 75 N. W. 901, and Marr v. Burlington, etc., 121 Iowa 117, 96 N. W. 716, the facts are so different from those in the case at bar as to be of no value whatever for comparison, and in the other case cited, that of Ford v. McLane, 131 Mich. 371, 91 N. W. 617, we find an instruction to have been given by the trial court and approved by the appellate court which, if followed in the case at bar, would have necessitated a verdict for the defendant.

Further considering this question of advantage to the promisor as tending to take the promise out of the statute of frauds, we would cite the case of Clapp v. Webb, 52 Wis. 638, 9 N. W. 796, wherein the court stated: "But the mere fact that an advantage may result incidentally to the promisor is not alone sufficient to take the agreement out of the statute. The resulting advantage to him must be the object of his promise—the consideration upon which it was made. We are not aware of the existence of any rule of law which authorizes the inference that, merely because the promisor may be incidentally benefited by his promise, his object in making it, and the consideration therefor, is such incidental benefit. Herein lies the infirmity of the plaintiff's case. There is no evidence tending to show that either the plaintiff, when he offered to wait until fall for payment of Harrington's debt, provided the defendant would give his note therefor, or that the defendant when he made the alleged promise to pay the debt in the fall, did so with reference to the plaintiff's right to enforce a lien on the logs. It does not appear that said right was mentioned in any conversation between the plaintiff and Harrington or between the latter and the defendant, or that it influenced the action, or was even thought of by either party until after the right to a lien had expired." In the foregoing case it appears that the plaintiff would have had a lien against logs belonging to the defendant if he had taken steps to preserve such lien in time, and he claims that, owing to the promise made by defendant, he lost his lien right and by so doing benefited the defendant.

In closing we would say that in the case at bar there is no evidence to show that plaintiffs, when furnishing the goods in question, relied upon defendant's promise. There is no evidence explaining away the prima facie proof that credit was given Miller, as shown by charging the goods to him on plaintiff's books. There is no evidence whatsoever to show any relation between Miller and Dodge making it to the interest of Dodge that the goods be furnished.

Upon a new trial, perhaps, the plaintiffs can furnish ample proof upon all the points above referred to; but, as the case now

stands, it is our opinion that the judgment below should be, and it is, reversed, as well as the order denying a new trial.

SMITH and McCOY, JJ., not sitting.